In re **LEAMON** et al.

**Patent Appeal No. 3736.**

Court of Customs and Patent Appeals.
Feb. 8, 1937.

M. W. Sandmeyer, Roy F. Steward, and Clarence O. McKay, all of Washington, D. C. (Frank S. Busser, of Philadelphia, Pa., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

■ This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting as unpatentable, in view of prior art cited, seven claims, numbered 13 to 19, inclusive, in appellants' application for patent, entitled "Process of Refining Motor Fuels for Removal of Gum-Forming Constituents."

Claims 13 and 15 are selected as fairly illustrative of the subject-matter:

"13. A process of removing gum-forming constituents from light mineral oils, which comprises heating the oil until the same is partially in the vapor phase and partially in the liquid phase, then contacting the mixed liquid and vapor phases with a solid adsorbent under conditions of pressure as to maintain part of the oil in the liquid phase and part of the oil in the vapor phase during contact with said adsorbent, the oils in vapor phase being permitted to pass from the solid adsorbent at an entirely more rapid rate than the oils maintained in liquid phase, thereby effecting a rapid formation of such tars, resins and gums as the oil in liquid phase

is capable of forming and removing the oils from the thus formed materials."

"15. A process of removing gum-forming constituents from light mineral oils, which comprises passing the oil in a flowing stream through a heating zone wherein the oil is heated to a temperature and pressure to cause part of the oil to be in the vapor phase and part of the oil to be in the liquid phase, then passing the stream of oil which is partially in liquid and partially in vapor phase into contact with a body of adsorbent material in such manner that the oil in vapor phase is maintained in contact with the adsorbent material for a shorter period of time than the portion of oil in liquid phase, thereby causing a rapid formation of such tars, resins and gums as the oil is capable of forming, and distilling the major portion of the oils from the heavier oils, gums, resins and tars contained therein."

The references finally relied upon by the board are:

Cross, 1,654,581, January 3, 1928.

Cross, 1,760,585, May 27, 1930.

Osterstrom et al., 1,797,513, March 24, 1931.

Lowery et al., 1,813,628, July 7, 1931.

Stafford, 1,823,175, September 15, 1931.

Appellants disclose by a drawing and describe in their specification an apparatus for carrying out their process, an examination of which drawing and description is of aid in understanding the claims, all of which are method claims. Their apparatus is shown as one in which oil is fed into a heating coil mounted in a furnace, the oil being raised to the desired degree of temperature during its passage through the coil. From the coil the heated oil flows into the lower part of a vessel, which is equipped with a transverse metal screen situated above the warm oil inlet. On top of the screen is a bed of contact material, such as fullers' earth, constituting a filter bed through which the warm oil flows upwardly and passes out at the top of the vessel through a line, or pipe, equipped with a valve for the regulation of pressure on the coil and filter vessel, passing into a chamber designated as a cooler, from whence it may be collected in a receiving tank, or, if desired, may be passed to a still. It is taught that in passing the oil through the heating zone it should be heated at not less than 175° F., and that for most oils a temperature in the neighborhood of 300° F. is the most satisfactory, with a pressure of 100 pounds per square inch.

From the decision of the board, we quote the following:

"The examiner has cited five references and relies on Stafford, and the Cross patent in rejecting all of the claims and relies on Osterstrom or Lowery in further rejecting claims 14, 15, 16 and 19. The first three patents referred to disclose similar methods of treating hydrocarbon oils. In each one, the oil is heated to a high temperature and then contacted with an absorbent such as fuller's earth or the equivalent, keeping the heated oil under sufficient pressure so that it remains mostly in liquid phase. In Stafford, the oil is then passed to a fractionating column and the light constituents are removed from the heavy constituents of the oil. The claims are believed to be unpatentable over the above patents as the oil is apparently treated in substantially the same way in them as required by the claims. The final distilling step used in separating the light oils from the heavier oils as required by claims 15 and 19 is fully met by Stafford. Furthermore, the Osterstrom et al. patent shows the use of a still 17 for the same purpose. The step of changing the pressure as the operation progresses is shown broadly by Stafford as the valves 7, 8 and 9 are used to maintain the desired pressure. Furthermore the only purpose of changing the pressure is to maintain a considerable portion of the oil in liquid phase, and this is resorted to as a general rule in operating systems of this kind.

"Claims 14, 15, 16 and 19 are also regarded unpatentable over Osterstrom et al. or Lowery et al. In these patents the absorbent is mixed with the oil and it is then heated. Applicant indicates in his specification that he regards this as an equivalent of passing the heated oil through a bed of absorbent material. Hence the claims are clearly unpatentable over these patents."

In presenting the case before us, counsel for appellants stress that feature of the claims reciting the maintenance of a part of the oil in vapor phase, this being accomplished, as we understand it, by regulation of the pressure. This feature is not emphasized in appellants' specification as being of advantage. Upon the con-

trary it is there said: "We have found that the process is far more efficient for gum removal when the oil being treated is in the liquid phase than when it is in the vapor phase. As a general rule the lighter fractions of an oil have less tendency to form gums than the heavier. Accordingly, it may be permissible in some cases to permit a certain amount of vaporization of the lighter fractions, reserving the treatment in liquid phase particularly for those heavier fractions which contain most of the gum-forming constituents."

It is not meant to suggest that the feature alluded to might not lend patentability in the absence of any prior art showing, but obviously it was not a feature which appellants particularly sought, and, in view of the showing of the prior art as to this, pointed out by the board, following the even more detailed statement by the examiner, we feel that appellants may not be credited with invention in this regard.

Discussing the Lowery patent, held by the board to be relevant to claims 14, 15, 16, and 19, the brief for appellants says that such patent is not addressed to the removal of gum-forming constituents from gasoline but to the removal of coloring matter from hydrocarbon oils, and particularly from lubricating oils. It seems sufficient upon this point to say, as the Solicitor for the Patent Office notes, that no one of the claims at issue mentions gasoline, and that under the rule stated in the case of In re Burk, 73 F.(2d) 497, 22 C.C.P.A. (Patents) 731, it is immaterial that color removal rather than the removal of gum-forming constituents is named as the purpose, or result, since the latter must be inherent in the process.

The arguments as to the other references and their alleged failure to negative invention by appellants have been quite carefully examined, but we cannot agree therewith.

A question relating to the action by the Patent Office tribunals upon an affidavit filed by appellants under Patent Office rule 75 was raised by certain of the reasons of appeal filed with us, but this was abandoned in the brief for appellants and at the oral hearing, and need not be considered.

The decision of the Board of Appeals is affirmed.

Affirmed.